Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000890
20-JUN-2017
11:18 AM

NO. CAAP-14-0000890

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

GF, Appellant-Appellant,
v.
DEPARTMENT OF HUMAN SERVICES, STATE OF HAWAI'I,
Appellee-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 14-1-0485-02)

SUMMARY DISPOSITION ORDER
(By:  Leonard, Presiding Judge, Ginoza and Chan JJ.)

In this secondary appeal from an administrative agency decision, Appellant-Appellant G.F. (**GF**) seeks review of a Judgment entered on June 4, 2014, by the Circuit Court of the First Circuit (**circuit court**),[1] in favor of Appellee-Appellee Department of Human Services, State of Hawai'i (**DHS**) and against GF.  The circuit court's Judgment affirmed an administrative hearing decision which confirmed caregiver neglect as specified in Hawaii Revised Statutes (**HRS**) § 346-222 (2015) and Hawaii Administrative Rules (**HAR**) § 17-1421-2 (2009).

On appeal, GF contends that the circuit court erred in not reversing the agency decision because: (1) the hearing officer violated GF's due process rights by deciding an issue not raised by DHS; (2) the hearing officer made many factual mistakes; and (3) the agency record is defective due to omissions

---

[1]  The Honorable Rhonda A. Nishimura presided.

in the administrative hearing transcript.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant legal authorities, we affirm in part and reverse in part.

DHS initiated an investigation prompted by an Adult Abuse and Neglect Case Report (**Abuse Report**) on March 28, 2011, which alleged neglect of a ninety-six (96) year old male (**Father**) by GF, based on his status as a vulnerable adult with a history of "CVA"[2] and dementia, and the presence of five decubitus ulcers upon admittance to the hospital. Father had been brought to the emergency room at a hospital (**Hospital**) on March 24, 2011, was admitted and subsequently passed away in April 2011. The Abuse Report indicates several concerns regarding caregiver neglect:

> [FATHER] HAS 5 DECUBITUS ULCERS - 3 ON HIS BACK (STAGE 2), 1 ON COCCYX (STAGE 3-4; 10 CM), 1 ON LATERAL HIP (UNSTAGEABLE)
>
> . . . .
>
> [FATHER] IS BEDBOUND, UNABLE TO GET UP ON HIS OWN
>
> . . . .
>
> [GF] HAS NOT TAKEN [FATHER] FOR MEDICAL APPTS SINCE JULY 2009 (WHEN HE HAD A STROKE & WAS PLACED AT HALE NANI FOR 2 MONTHS, THEN A CAREHOME FOR A MONTH; BUT HE WANTED TO RETURN HOME)

After an investigation, on August 9, 2011, DHS issued a Notice of Disposition of the Adult Protective Services Investigation, confirming "Caregiver Neglect" of Father. In a request dated August 13, 2011, GF requested an administrative hearing. On March 7, 2013, a hearing was held before a Hearing Officer from DHS's Administrative Appeals Office. On March 28, 2013, the Hearing Officer issued a Notice of Administrative Hearing Decision (**Administrative Hearing Decision**), which pursuant to stipulation of the parties was re-issued on February 20, 2014. Based on his findings of fact and conclusions of law, the Hearing Officer determined that DHS correctly confirmed caregiver neglect by GF. GF appealed the Hearing Officer

---

[2] Based on the record, it appears "CVA" refers to a stroke that Father had suffered several years before.

decision to the circuit court, and the circuit court entered the Judgment in favor of DHS.

HRS § 346-222 defines "caregiver neglect."[3] In a secondary appeal, questions of fact are reviewed under the clearly erroneous standard whereas administrative conclusions of law are reviewed under the de novo standard. AlohaCare v. Ito, 126 Hawai'i 326, 341, 271 P.3d 621, 636 (2012). "An agency's findings, if supported by reliable, probative and substantial evidence, will be upheld." In re Hawai'i Elec. Light Co., 60 Haw. 625, 630, 594 P.2d 612, 617 (1979)(citations omitted). Furthermore,

> [i]t is well established that courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.

Moi v. Dep't of Pub. Safety, 118 Hawai'i 239, 242, 188 P.3d 753, 756 (App. 2008)(citations omitted).

---

[3] HRS § 346-222 provides:

> "Caregiver neglect" means the failure of a caregiver to exercise that degree of care for a vulnerable adult that a reasonable person with the responsibility of a caregiver would exercise within the scope of the caregiver's assumed, legal or contractual duties, including but not limited to the failure to:
> (1) Assist with personal hygiene;
> (2) Protect the vulnerable adult from abandonment;
> (3) Provide, in a timely manner, necessary food, shelter, or clothing;
> (4) Provide, in a timely manner, necessary health care, access to health care, prescribed medication, psychological care, physical care, or supervision;
> (5) Protect the vulnerable adult from dangerous, harmful, or detrimental drugs, as defined in section 712-1240; provided that this paragraph shall not apply to drugs that are provided to the vulnerable adult pursuant to the direction or prescription of a practitioner, as defined in section 712-1240;
> (6) Protect the vulnerable adult from health and safety hazards; or
> (7) Protect the vulnerable adult from abuse by third parties.

(Emphasis added.)

**(1) Finding Not Raised by DHS.** GF contends her due process rights were violated because the Hearing Officer made a finding of caregiver neglect that was not raised by DHS, and that this shows improper bias by the Hearing Officer against her. GF points to statements in the Administrative Hearing Decision that GF acted contrary to hospital personnel orders that Father should only be fed at hospital-determined intervals due to possible aspiration, and that her failure to follow the recommended intervals "would also amount, at a minimum, to a finding of caregiver neglect."

The discussion about the feeding issue follows a summary of the Hearing Officer's rulings on the main issues (*i.e.*, failure to properly assist in Father's hygiene and failure to timely seek medical attention for Father), and are not necessary in deciding the main issues. Although DHS referenced the feeding issue in a document entitled Internal Communication Form (**ICF**) dated October 14, 2011,[4] the ICF does not appear to assert a finding of caregiver neglect on this basis. Thus, because the challenged statements about the feeding issue can be construed as a finding of caregiver neglect, it should be struck from the Administrative Hearing Decision.

Nonetheless, based on our review of the record as a whole, we do not view the statement about the feeding issue as indicating the Hearing Officer was biased or in any other way affecting the validity of the pertinent rulings by the Hearing Officer.

**(2) Alleged Factual Mistakes by the Hearing Officer.** GF challenges various conclusions, findings or statements in the Administrative Hearing Decision, asserting they are not supported by the record and/or are incorrect. GF first contests the Hearing Officer's determination that she

> failed to adequately treat and/or failed to inquire from a medical professional or notify a medical professional of her [Father's] debucitis (bed sore) as it continued to grow and

---

[4] The ICF was provided to GF prior to the administrative hearing, and in a letter to GF dated February 19, 2013, the Appeals Administrator advised that the ICF and exhibits provided to GF "indicate the issues that will be raised at the hearing and the facts alleged by [DHS]."

worsen over a two (2) week period which ultimately led to the deterioration of her father's medical condition and sepsis.

GF claims that this determination is not true because she treated the one sore she was aware of, and it was the bed sores she did not know about that contributed to her Father's demise.  While the record reflects that GF did attempt to treat the one sore that she knew about, it is also uncontested that this sore grew and got worse, and she did not immediately seek medical assistance.  Further, although GF argues that there is conflicting evidence as to when the other bed sores developed, there is sufficient evidence in the record to support the finding that they developed over the two week period prior to Father's hospitalization when he was bedridden and his backside was not observed or cleaned.

Dr. #6 from the Hospital provided a letter addressing Father's condition indicating, *inter alia*, details about the bed sores, that "[a]ll the wounds were severely tender to palpatation[]" and "[b]lood analysis indicated infection."  The letter from Dr. #6 also stated that:

Pressure ulcers of this nature tend to develop when a person does not move from one position after a period of time. This results in lack of blood flow to the area of pressure and breakdown of skin integrity.  Time to formation of ulcer is also dependent on level of nutrition.

The Hearing Officer determined that "the record supports [DHS's] position that [GF's] failure to take [Father] to the hospital in a timely manner resulted in additional bed sores that were infected and got to the point that [Father] suffered from sepsis[.]"  GF challenges the Hearing Officer's assessment of the testimony and evidence, and in essence asks this court to re-weigh the evidence and reassess the credibility of witnesses presented at the administrative hearing.  However, based on the record, we conclude there is reliable and probative evidence to support the Hearing Officer's finding in this regard and the finding is not clearly erroneous.

GF also asserts that the Hearing Officer erred in finding that GF failed to assist Father with proper hygiene.  It is undisputed that, during the period that Father became

bedridden from March 9, 2011 to his hospitalization on March 24, 2011, GF did not observe or clean Father's backside. Based on the objective standard required under HRS § 346-222, the Hearing Officer did not err in determining she failed to assist Father with proper hygiene.

GF also raises an issue about whether Father could communicate or not, asserting that although a DHS employee testified she was unable to communicate with Father when he was in the Hosptital, other evidence indicates that he was communicating both before and after he became bedridden on March 9, 2011. GF thus contends that if Father had bed sores developing or any pain in his back between March 9 and March 24, 2011, he would have told her and she would have acted. Although there is some evidence of Father's minimal ability to communicate in the Hospital, this does not establish with any certainty when his bed sores developed. The record, including the severity of the bed sores and the letter from Dr. #6, is sufficient to show that the bed sores developed during the period after March 9, 2011, when Father was bedridden and his backside was not observed or cleaned.

GF also takes issue with the Hearing Officer's "focus" on the fact that she had not taken Father to see a medical professional since sometime in 2009. However, it is uncontested that GF took Father to a doctor after his release from Hale Nani in 2009, but thereafter did not take him to see a medical professional until he was taken to the hospital on March 24, 2011. We see no error in the Hearing Officer noting this as part of the background in this case. It was not a basis on which the Hearing Officer concluded there was caregiver neglect.

GF's other arguments regarding the Hearing Officer's findings or determinations are also unavailing. In general, we note the record indicates that GF dedicated significant effort and time in the care of her Father, and this is admirable. However, we also note that caregiver neglect under HRS § 346-222 is not determined on a subjective basis, but rather an objective basis: "the failure of a caregiver to exercise that degree of care for a vulnerable adult that a reasonable person with the

6

responsibility of a caregiver would exercise within the scope of the caregiver's assumed, legal or contractual duties[.]" HRS § 346-222. In regards to what occurred from March 9, 2011 until Father was taken to the hospital on March 24, 2011, there is sufficient evidence to support the Hearing Officer's determinations in this case based on a failure to assist with personal hygiene and to provide timely medical care.

(3) **Administrative Hearing Transcript.** GF contends that the circuit court should be reversed because the transcript of the administrative hearing is incomplete. There are portions of the transcription of the administrative hearing which indicate that a word or words were "inaudible." However, the transcript is largely intact and this court can sufficiently review the administrative hearing. Thus, this contention is without merit.

Therefore, IT IS HEREBY ORDERED that the Judgment entered on June 4, 2014, in the Circuit Court of the First Circuit, is reversed to the extent that the "Amended Administrative Hearing Decision," issued on February 20, 2014, contains a determination of caregiver neglect based on GF's feeding of Father. In all other respects, the circuit court's Judgment is affirmed.

DATED: Honolulu, Hawai'i, June 20, 2017.

On the briefs:

Edward C. Kemper,
for Appellant-Appellant.

Heidi M. Rian,
Candace J. Park,
Deputy Attorneys General,
for Appellee-Appellee.

Presiding Judge

Associate Judge

Associate Judge

7